**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CHRISTOPHER J. BENTON,**

      **Plaintiff,**

**vs.**                             **Case No. 4:10cv578-WS/CAS**

**SERGEANT JAMES YON,**

      **Defendant.**

_____/

**SECOND REPORT AND RECOMMENDATION**

      Defendant Yon has filed a motion to dismiss Plaintiff's second amended

complaint on the basis that Plaintiff has failed to state a claim upon which relief may be

granted. Doc. 60. Defendant also asserts qualified immunity and seeks to dismiss

Plaintiff's request for compensatory or punitive damages. The pro se Plaintiff was

provided an opportunity to respond, doc. 62, and his response was timely filed. Doc.

63. It is recommended that Defendant's motion to dismiss be granted in part such that

Plaintiff's request for punitive damages be dismissed but otherwise denied, and this

case be remanded for further proceedings.

**Standard of Review**

      The issue on whether a complaint should be dismissed pursuant to Fed.R.Civ.P.

12(b)(6) for failing to state a claim upon which relief can be granted is whether the

plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009), *quoting* Twombly, 550 U.S. at 570, 127 S.Ct. 1955.[1]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949, *citing* Twombly, 550 at 556; *see also* Speaker v. United States Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 556.  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility."  Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 557.

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil

---

[1] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

actions, with limited exceptions.").  Pro se complaints are held to less stringent

standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967

(11th Cir. 1986), *citing* Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30

L.Ed.2d 652 (1972).  "The threshold of sufficiency that a complaint must meet to survive

a motion to dismiss for failure to state a claim is . . . 'exceedingly low.' "  Ancata v.

Prison Health Serv., Inc., 769 F.2d 700, 703 (11th Cir. 1985), *quoting* Quality Foods de

Centro America, S.A. v. America Agribusiness Dev., 711 F.2d 989, 995 (11th Cir.

1983).  Nevertheless, a complaint must provide sufficient notice of the claim and the

grounds upon which it rests so that a "largely groundless claim" does not proceed

through discovery and "take up the time of a number of other people . . . ."  Dura

Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577

(2005), *quoted in* Twombly, 127 S.Ct. at 1966.  A complaint does not need detailed

factual allegations to survive a motion to dismiss, but it must provide the grounds for a

plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic

recitation of the elements of a cause of action . . . ."  Twombly, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides
> sufficient notice, a defendant can move for a more definite statement
> under Rule 12(e) before responding.  Moreover, claims lacking merit may
> be dealt with through summary judgment under Rule 56.

Swierkiewicz, 122 S.Ct. at 998-999.

In reviewing a motion to dismiss based on qualified immunity, the Court must

accept "the facts alleged in the complaint as true, drawing all reasonable inferences in

the plaintiff's favor, and limiting [ ] review to the four corners of the complaint."  St.

George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted),

*quoted in* Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). The Supreme

Court has stated that because this privilege is "immunity from suit" and not "a mere

defense to liability," it should be resolved "at the "earliest possible stage in litigation."

Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), *quoted in*

Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

The Court in Saucier mandated a two step analysis for resolving qualified

immunity issue. 533 U.S. at 201, 121 S.Ct. at 2156. First, a court must decide whether

a plaintiff alleged facts which "make out a violation of a constitutional right" and, if so,

then the "court must decide whether the right at issue was 'clearly established' at the

time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232, 129

S.Ct. 808, 815-816 (2009), *quoting* Saucier, 533 U.S. at 201. While Saucier mandated

that sequence, the Supreme Court concluded in Pearson, 129 S.Ct. 808, 818 (2009)

that the process "should no longer be regarded as mandatory." Judges "should be

permitted to exercise their sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the

particular case at hand." 129 S.Ct. at 818.

**Plaintiff's Second Amended Complaint, doc. 53**

Plaintiff alleged that "[o]n October 1, 2010, there was a massive shake down at

Wakulla Correctional Institution (Annex)." *Id.* at 5. The inmates were directed to strip

down to their boxers and slides only, and when Plaintiff and his cell mate left their cell,

Plaintiff was asked, "Why are you not wearing boxers?" *Id.* Plaintiff, who was wearing

blue shorts, answered, "I don't have any, sir." *Id.* The officer told Plaintiff he was going

to "[expletive] your room up." *Id.* While the inmates were downstairs waiting for the

shake down to end, an officer confirmed with Plaintiff's cell mate which locker was his, and "stated after being informed, 'That's all I wanted to know.' " *Id.*

When Plaintiff returned to his cell, he found "all of his legal work had been thrown all over his cell floor; his Holy Qu'ran was thrown on the floor to where the cover was butterflied open with some of the pages torn and crumbled up." *Id.* at 5. Plaintiff's glasses were thrown away and his "prayer rug had been thrown to the floor drenched in water from Plaintiff's water bottle which the Officer intentionally poured out." *Id.* at 5-6. As the officer was closing his door, he said to Plaintiff, "I didn't know you were one of them." *Id.* at 6. Plaintiff asked, "What do you mean, I'm not in a gang." *Id.* The officer responded, "Not a gang member, a Muslim," and he smiled "in a belligerent manner." *Id.* Plaintiff asked the officer his name and he told Plaintiff it was "Shellnut." *Id.* After filing this case and conducting discovery, Plaintiff learn that "the true identity of the Officer that tore and crumbled pages from Plaintiff's Holy Qu'ran and poured water all over his prayer rug drenching it" is Defendant Sergeant James Yon. *Id.* at 6. Plaintiff contends the Defendant's actions were due to religious hatred and discrimination in violation of his First and Fourteenth Amendment rights. *Id.* at 7. Plaintiff seeks a declaratory judgment, "nominal damages" of $8,000.00 and punitive damages of $15,000.00. *Id.* at 7-8.

**Equal Protection Claim**

The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). "To establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who

received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race," gender, or religion. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001), *citing* Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986). Accordingly, Plaintiff must present allegations which show he was treated differently from others who were similarly situated to him. Nordlinger v. Hahn, 505 U.S. 1, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). Plaintiff must also allege Defendant acted with the intent to discriminate against him. McClesky v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987).

Defendant contends that Plaintiff's complaint fails to state a claim for the denial of equal protection. Doc. 60 at 4-7. Defendant argues that "Plaintiff's Second Amended Complaint does not allege facts which support this claim of religious discrimination." *Id.* at 5. Defendant asserts that "Plaintiff's allegations fail to demonstrate how he was treated differently than *any* other inmate and necessarily fails to satisfy the first prong of the equal protection standard." *Id.*

The Supreme Court has advised that:

> . . . a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009). Especially in the context of a case where qualified immunity is raised, it must be determined "before proceeding to discovery," that a complaint has alleged "facts suggestive of illegal

conduct." Twombly, 550 U.S., at 564, n. 8, 127 S.Ct. 1955, *quoted in* Ashcroft, 556 U.S. at 696, 129 S.Ct. at 1959 (Souter, J., dissenting).

Here, Plaintiff did not make legal conclusions or simply provide a "formulaic recitation of the elements" of his claim. Plaintiff alleged specific facts, which must be taken as true, and he then drew a conclusion from those facts - that he had been subjected to discrimination because of his faith. Plaintiff's facts show that Defendant Yon ("the Officer") asked a question during the search to determine which locker belonged to Plaintiff, and when Plaintiff returned to his cell, he found his religious property desecrated. Defendant then said to Plaintiff that he did not know Plaintiff was "one of them," meaning a Muslim. With the exception of throwing Plaintiff's legal work "all over his cell floor" and throwing away Plaintiff's glasses, all other alleged damage was done to items of a religious nature pertinent to Plaintiff's faith. Considering the Defendant's comments along with the specific items of property which were desecrated provides reason to believe that Defendant's actions were intentional. An inference may also be made that by giving Plaintiff a false name, the Defendant sought to hide his identity and was aware that his conduct went beyond the bounds of a reasonable search and shakedown. Plaintiff's complaint states a plausible claim that his religious property was targeted for destruction because Plaintiff was identified during the shake down as a Muslim inmate.

Defendant argues that Plaintiff's complaint fails to make the equal protection connection because at the beginning of Plaintiff's interaction with the Defendant, Plaintiff alleged that the Defendant told him he would "[expletive] up" Plaintiff's room. Doc. 60 at 6, *citing* doc. 53 at 5. It may be assumed that the statement was made prior

to any knowledge of Plaintiff's religious belief and, thus, according to Defendant, shows that no religious discrimination was involved. However, the fact that a threatening statement was made to Plaintiff prior to the search does not mean that upon discovery of Muslim religious material, the intent did not change. A reasonable jury could construe the comments made to Plaintiff after the search as sufficient evidence of an intentional act to desecrate Plaintiff's religious property, especially coupled with the fact that it was predominantly religious property that was targeted.

It is true that Plaintiff's complaint does not clearly allege that Plaintiff was treated differently than other inmates, or that other non-Muslim inmates did not have property destroyed or vandalized. However, when considered along with the statements of the Defendant, a reasonable inference may be drawn that the Defendant acted against Plaintiff with a bias against the Muslim faith and that he did not do so to non-Muslim inmates. It is reasonable to conclude that the lack of any facts showing that Plaintiff's cell mate's property was also destroyed, or that other inmates had their property harmed means that Plaintiff's property was treated differently. The complaint should not be dismissed on this basis as Plaintiff has sufficiently alleged facts which support an equal protection claim. *See* Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (reversing dismissal of civil rights complaint in which prisoner alleged "that solely because of his religious beliefs he was denied permission to purchase certain religious publications and denied other privileges enjoyed by other prisoners.").

**First Amendment**

Defendant contends that Plaintiff has not alleged a viable First Amendment claim. Doc. 60 at 7-9. Defendant argues that even if Plaintiff's prayer rug was

"drenched in water" and his Qu'ran had "pages torn and crumbled up," that did "not impermissibly burden Plaintiff's ability to practice his religion." *Id.* at 7.  Defendant further suggests that to clean a prayer rug, the "rug should be soaked in water and then allowed to air dry, which in substance, is not overly different from the conduct in which Plaintiff alleges Defendant engaged." *Id.* at 7-8.

The fact that there may or may not be an "apparent religious prohibition against prayer rugs getting wet" does not mean that someone other than the owner of the prayer rug should wash it.  The suggestion that Defendant was doing nothing more than aiding in the washing of the rug is rejected.

The Supreme Court has given the following guidance for considering First Amendment claims:

> Precisely because of the religious diversity that is our national heritage, the Founders added to the Constitution a Bill of Rights, the very first words of which declare: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...."  Perhaps in the early days of the Republic these words were understood to protect only the diversity within Christianity, but today they are recognized as guaranteeing religious liberty and equality to "the infidel, the atheist, or the adherent of a non-Christian faith such as Islam or Judaism."

County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter, 492 U.S. 573, 589-590, 109 S.Ct. 3086, 3099 (1989), *quoting* Wallace v. Jaffree, 472 U.S. 38, 52, 105 S.Ct. 2479, 2487, 86 L.Ed.2d 29 (1985).  It has been long established that the Establishment Clause requires the State to be neutral on matters of religion and may not endorse or prefer one religion over another.  *See* Engel v. Vitale, 370 U.S. 421, 436, 82 S.Ct. 1261, 1270, 8 L.Ed.2d 601 (1962); Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance.

Everson v. Board of Educ., 330 U.S. 1, 15-16, 67 S.Ct. 504, 511 (1947), *quoted in*

County of Allegheny, 492 U.S. at 591, 109 S.Ct. at 3100. "The clearest command of

the Establishment Clause is that one religious denomination cannot be officially

preferred over another." Larson v. Valente, 456 U.S. 228, 244, 102 S.Ct. 1673, 1683,

72 L.Ed.2d 33 (1982).

Accepting Plaintiff's allegations as true, which they must be on a motion to

dismiss, Plaintiff has shown that the Defendant, a correctional officer, singled Plaintiff

out for adverse treatment and made verbal statements suggesting Plaintiff's religious

preference was, indeed, not preferred. Plaintiff's claim is not viewed as suggesting that

he was deprived of the opportunity to practice his religious faith or to exercise religious

freedom.[2] Rather, viewing Plaintiff's allegations together with the equal protection

claim, the complaint raises a claim for a violation of the Establishment Clause because

the Defendant's comments and actions reflect a negative view of Plaintiff's religious

faith, not a neutral one. Board of Educ. v. Grumet, 512 U.S. 687, 114 S.Ct. 2481, 2487,

---

[2] In response to the motion to dismiss, Plaintiff contends that in addition to the Establishment Clause and the Free Exercise Clause, he has stated a claim under the Religious Freedom Restoration Act (RFRA). Doc. 63 at 2. Notwithstanding that the Supreme Court has declared RFRA unconstitutional as applied to the states, City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), Plaintiff's complaint fails to allege a RFRA claim and fails to present any factual allegations which address how he was unable to practice his faith or how he was substantially burdened in the exercise of religious freedom.

129 L.Ed.2d 546 (1994) (stating "[a] proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of 'neutrality' toward religion, . . . favoring neither one religion over others nor religious adherents collectively over nonadherents.") (internal citations omitted). The motion to dismiss should be denied as to this basis.

**Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), *quoted in* Pearson, 555 U.S. at 231, 129 S.Ct. at 815. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." 555 U.S. at 231, 129 S.Ct. at 815. The purpose of qualified "immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation omitted). "[O]fficials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages . . ." Gonzalez v. Lee Cnty. Hous. Auth., 161 F.3d 1290, 1303 (11th Cir. 1998), *quoting* Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984).

Defendant contends that he is entitled to qualified immunity as Plaintiff "fails to state a claim" for the violation of Plaintiff's constitutional rights and because Defendant "did not violate any clearly established law . . . ." Doc. 60 at 10. "[T]o show that the constitutional violation was clearly established, [Plaintiff] must demonstrate (1) 'that a materially similar case has already been decided, giving notice to the police;' (2) 'that a broader, clearly established principle should control the novel facts in this situation;' or (3) 'this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary.' " Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005) (citations omitted), *quoted in* Keating v. City of Miami, 598 F.3d 753, 766 (11th Cir. 2010) (finding rights were clearly established under the second Mercado category). "Although our research has located no cases that illustrate a factually identical violation of the First Amendment, '[p]rior cases clearly establishing the constitutional violation . . . need not be 'materially similar' to the present circumstances so long as the right is 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1185 (11th Cir. 2009) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)), *quoted in* Keating, 598 F.3d at 766.

It is well settled that prisoners do not forfeit all First Amendment rights, including the right to exercise religious practices and beliefs, upon incarceration. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861 (1979). It has also been settled for over 40 years that it is unlawful for a prisoner to be treated differently than other prisoners because of his religious beliefs. *See* Cooper, 378 U.S. 546, 84 S.Ct. 1733, *cited in* Cruz v. Beto, 405 U.S. 319, 321-322, 92 S.Ct. 1079, 1081 (1972). Furthermore, as explained above, it

has already been concluded that Plaintiff has stated a claim for a violation of his

constitutional rights. Accordingly, the first prong of the qualified immunity analysis is

met.

As for the second prong, Defendant suggests that there is no clearly established

law that would inform a correctional officer "that pouring water on a Muslim prayer rug

or crumbling or tearing pages of a Holy Quran would constitute religious discrimination

or an impermissible burden upon the practice of religion . . . ." Doc. 60 at 11. The

Court has also been unable to locate any case presenting these identical facts before

the United States Supreme Court, Florida Supreme Court or the Eleventh Circuit Court

of Appeals. *See* Vega v. Lantz, No. 3:04cv1215 2006 U.S. Dist. LEXIS 69120, at *7,

*26-31 (D.Conn. Nov.6, 2006) (denying qualified immunity to claim that correction staff

were improperly handling inmate's Qu'ran and tossing it on the floor during cell

inspections); Tariq v. Chatman, No. 1:11cv159 2012 U.S. Dist. LEXIS 118544 (M.D.

Ga. July 18, 2012) (denying qualified immunity on inmate's free exercise claim where

inmate alleged defendants seized and destroyed his Qu'ran). "The absence of such a

case is not fatal" to Plaintiff's claim against the Defendant. *See* Gonzalez, 161 F.3d at

1301 (acknowledging "the possibility that some federal statutory provisions will be

sufficiently clear on their own to provide defendants with fair notice of their obligations

under the law"). The Rules which govern the Department of Corrections provides:

"There shall be no discrimination for or against an inmate based on his religious beliefs

or practices . . . ." FLA. ADMIN. CODE R. 33-503.001(2)(c). On the basis of this Rule,

and well established law from the Supreme Court, it should come as no surprise to a

correctional officer that he would be hailed into court for the intentional destruction of

inmate religious property which demonstrate a bias against that inmate solely because of his religious beliefs.  The motion to dismiss should be denied on the basis of qualified immunity.

**Punitive Damages**

Plaintiff has requested that he be awarded "nominal" damages of $8,000.00 and punitive damages of $15,000.00.  Doc. 53 at 8.  Plaintiff did not allege any physical injury or harm as a result of the alleged constitutional violations and none would normally be present as there was no physical contact between Plaintiff and Defendant. Because there is no physical injury to Plaintiff as a result of these alleged First Amendment violations, Plaintiff's request for monetary damages must necessarily be limited to nominal damages as required by 42 U.S.C. § 1997e(e).[3]  Harris v. Garner, 216 F.3d 970 (11th Cir. 2000)[4], *reinstating in part* 190 F.3d 1279 (11th Cir. 1999); Osterback v. Ingram, No. 00-10558, 263 F.3d 169 (11th Cir. 2001) (Table). Furthermore, the Eleventh Circuit has expressly held that "the PLRA precludes the recovery of punitive damages in the absence of physical injury."  Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011), *citing* Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007); *see also* Napier v. Preslicka, 314 F.3d 528, 534 (11th Cir. 2002).  Therefore, the

---

[3] "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).

[4] Harris v. Garner, 190 F.3d 1279 (11th Cir. 1999) was vacated by 197 F.3d 1059, and the opinion reinstated in part on rehearing by 216 F.3d 970 (11th Cir. 2000), *cert. denied* 121 S. Ct. 2214 (2001).  The parts of the panel opinion relevant to this legal issue were reinstated.

motion to dismiss Plaintiff's request for punitive damages must be granted, and

Plaintiff's claims are limited to nominal damages only.[5]

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's

motion to dismiss, doc. 60, be **DENIED in part** and **GRANTED in part.** Plaintiff's

requests for punitive damages is barred by 42 U.S.C. § 1997e(e) and is **DISMISSED**,

but the motion should otherwise be **DENIED**. It is further recommended that this case

be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on October 22, 2012.


S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[5] At this point in the case there is no need to draw a line in the sand, but Plaintiff is advised that $8,000.00 is not a "nominal" award. Nominal damages means nominal.